IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GARLAND R. MANN,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, and RV RETAILER TEXAS II, LLC,<br><br>Defendants. | **8:25CV332**<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE AMENDED COMPLAINT AND ADD PARTIES, AND DEFENDANTS' MOTION TO STRIKE** |

Plaintiff Garland R. Mann brought this action against Defendants U.S. Bank National Association (U.S. Bank) and RV Retailer Texas II, LLC, (RV Retailer) on May 5, 2025. Filing 1. Four motions are currently pending. Filing 23; Filing 27; Filing 31; Filing 39. U.S. Bank and RV Retailer have moved to dismiss the Amended Complaint, Filing 12, under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). Filing 23; Filing 27. Garland Mann has moved "for leave to amend his [Amended] [C]omplaint and add parties." Filing 31. Lastly, U.S. Bank and RV Retailer have moved to strike Garland Mann's reply brief, Filing 38. Filing 39. For the reasons below, the Court denies Defendants' Motion to Strike, grants Garland Mann's Motion for Leave to Amend, and denies Defendants' Motions to Dismiss as moot.

## I.   INTRODUCTION

The Court first presents the allegations in the Second Amended Complaint (Proposed Complaint) that is the subject of Garland Mann's Motion for Leave to Amend prior to addressing Defendants' Motions to Dismiss. This course is appropriate because if the Court grants the Motion for Leave to Amend, the Proposed Complaint would supersede the Amended Complaint and render Defendants' pending Motions to Dismiss moot. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067

1

(8th Cir. 2000) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." (citing *Washer v. Bullitt Cnty.*, 110 U.S. 558, 562 (1884))). Such a course is also appropriate because Garland Mann's Motion for Leave to Amend is his only response to Defendants' Motions to Dismiss.

Defendants challenge Garland Mann's Motion for Leave to Amend on the basis of futility. *See* Filing 35. As discussed more fully below, motions for leave to amend are denied on the basis of futility when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) (alteration in original) (quoting *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). The Court therefore considers the following allegations from the Proposed Complaint as true to the extent that they are nonconclusory. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). The Proposed Complaint is found at Filing 32 at 12–56. The Court also considers "materials necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record." *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (internal quotation marks and citations omitted).

### A. Factual Background

This case traces back to an interaction between a deceased former RV Retailer employee, Randy Marr,[1] and plaintiff Garland Mann's son and proposed nominal defendant, Derek Mann.[2]

---

[1] The "Estate of Randy Dale Marr" is a proposed defendant. Filing 32 at 12.

[2] The body of the Proposed Complaint spells Derek Mann's name as "Derek Mann." *See* Filing 32. The declaration prepared by Plaintiff's attorney for Derek Mann spells his name, "Derrek Mann." Filing 32 at 11; Filing 32 at 3 (¶ 8). The Court uses the spelling offered in the body of the Proposed Complaint.

*See* Filing 32 at 15–16 (¶¶ 13–15). The Court will identify Garland Mann throughout as Garland and will identify Derek Mann throughout as Derek.

The body of the Proposed Complaint leaves Derek's role in the matter unclear. *See generally* Filing 32. However, Garland's Motion includes a declaration purportedly made by Derek that provides some context for the body of the Proposed Complaint. Filing 32 at 3, 11. According to Derek's declaration, he interacted with a salesman named Randy Marr for the purpose of purchasing a "2020 Cyclone Model 4270 Recreational Vehicle" from RV Retailer on October 3, 2019. *See* Filing 32 at 11 (¶ 1). However, Marr allegedly "told [Derek] that [Derek's] credit was not good enough to obtain financing" and apparently "asked if anyone else would finance [the RV] for [Derek]." Filing 32 at 11 (¶¶ 3–4). Derek allegedly replied that his dad "might and gave him [Garland's] phone number so [Marr] could call [Garland]." Filing 32 at 11 (¶ 5). According to the declaration, Marr "had [Derek] return to the dealership to pick up the RV and [Marr] explained [Garland] had gotten the financing and [Marr] gave [Derek] the paperwork so [Derek] could make the payments." Filing 32 at 11 (¶ 6). According to the declaration, "[Marr] allowed [Derek] to leave with the RV and [Derek] later made payments to the account number [Marr] gave [Derek]." Filing 32 at 11 (¶ 8). This case concerns the financing of this RV transaction, as Garland alleges that he never authorized any credit to be issued in his name. *See generally* Filing 32 at 12–56 (Proposed Complaint).

According to the Proposed Complaint, "On and around October 3, 2019, RV Retailer and US Bank through their agent [Marr] completed a finance application in [Garland's] name and submitted the same to US Bank's recreational vehicle finance division so that RV Retailer could sell [an RV] and so that US Bank could finance that sale." Filing 32 at 16 (¶ 16). According to the Proposed Complaint, however, Garland did not complete or authorize any financing application.

3

Filing 32 at 20 (¶ 34) ("[Garland] did not authorize [Marr] or any Defendant or agent of them to sign any promissory note or credit agreement for the purchase of the RV."). Nonetheless, Marr allegedly "processed the application all while knowing it was not signed by [Garland]," as "[Garland] was not present and did not complete the application." Filing 32 at 17–18 (¶ 19, 23).

Garland alleges various errors relating to the application process. According to Plaintiff, "US Bank and RV Retailer policies required their employees and agents to obtain a photo identification from the borrower as a condition of approving any financing applications, but no such photo identification was obtained," as Marr "intentionally did not request such documentation." Filing 32 at 18–19, 27 (¶¶ 25, 62–64). Additionally, according to Garland, Marr listed Garland's employer as "Bishop Plumbing and Heating" on the financing application. Filing 32 at 21 (¶ 36). According to the Proposed Complaint, however, "Bishop Plumbing and Heating was not [Garland's] employer as of October 3, 2019, the date the fraudulent application was dated," although Garland had worked for Bishop Plumbing and Heating "before the fraudulent credit application was completed." Filing 32 at 21 (¶¶ 37–38). Garland allegedly "terminated his employment [with Bishop Plumbing and Heating] in March of 2019." Filing 32 at 21 (¶ 38). According to the Proposed Complaint, the "amount of wages" Garland earned at Bishop Plumbing and Heating "was not even close to" what was listed on the application (*i.e.*, $8,500 per month). Filing 32 at 22 (¶ 40).

According to the Proposed Complaint, "[Marr] . . . falsely informed Derek before Derek accepted possession of the RV that [U.S. Bank] and RV Retailer had obtained consent of Garland to finance the RV in Garland's name." Filing 32 at 19 (¶ 26). Garland alleges, "Derek, not Garland, took possession of the RV after [Marr] told [Derek] that Garland had agreed to finance the RV." Filing 32 at 19 (¶ 27). After receiving possession of the RV, "Derek . . . started making the

4

payments on the loan obtained in Garland's name." Filing 32 at 19 (¶ 30). According to Garland, he did not know of these events "until Derek in a telephone conversation in July of 2024 told him" what had transpired. Filing 32 at 19 (¶ 28). Garland also alleges that "[s]ince October 2024 U.S. Bank has continuously harassed Garland with dunning phone calls, lawsuits, and letters demanding that he pay for credit he never received and return a[n] RV he never owned." Filing 32 at 23 (¶ 47).

Derek declares that when he defaulted on payments for the RV, he was "contacted by a repo company." Filing 32 at 11 (¶ 9). According to Garland's Proposed Complaint, on May 25, 2025, "US Bank informed Garland that they ha[d] seized the RV not in his possession" and "intended to sell the RV and charge any deficiency to his account." Filing 32 at 24 (¶ 49). Garland alleges that he "could not have discovered these events [meaning the financing of the RV in his name] until he pulled his credit reports in May of 2025 or at least until he was first being dunned by US Bank in October of 2024." Filing 32 at 19 (¶ 29). Garland also alleges that "Garland's most recent credit report shows that US Bank did in fact charge the deficiency to his account in June of 2025." Filing 32 at 24 (¶ 50). Despite being informed by his son of what happened in July 2024, Filing 32 at 19 (¶ 27), and being "harassed . . . with dunning phone calls, lawsuits, and letters demanding [payment]" by U.S. Bank since October 2024, Filing 32 at 23 (¶ 47), Garland alleges that "[i]t was not until Garland obtained his credit reports in May and June of 2025 that he saw the loan for the RV was obtained in his name." Filing 32 at 37 (¶ 98).

Garland alleges that he has disputed that he ever agreed to the financing agreement with U.S. Bank. *See* Filing 32 at 25 (¶¶ 55–56). Specifically, Garland alleges that U.S. Bank provided "[him] with the forged loan application" in May 2025. Filing 32 at 25 (¶ 54). According to Garland, when the application was provided, "Garland again communicated to US Bank that there was no photo identification included with the application or otherwise provided to Defendants because he

5

never applied for such credit with US Bank." Filing 32 at 25 (¶ 54). Also in May 2025, Mann alleges that he "fil[ed] an online dispute with Equifax . . . in accordance with the Fair Credit Reporting Act informing them that he did not apply for [c]redit with U.S. Bank," which according to Garland would have caused Equifax to "alert[]" U.S. Bank "to the fact that Garland did not apply for credit to purchase the RV." Filing 32 at 25 (¶¶ 55–56). According to Garland, "[he] again submitted by U.S. mail a written dispute which included the acts alleged [in the Proposed Complaint] to all three credit bureaus and to US Bank's Counsel on August 25, 2025." Filing 32 at 25 (¶ 57).

However, Garland alleges that, despite being prompted to investigate the disputes in June and September 2025, "when all three credit bureaus would have notified them of the dispute in this case," U.S. Bank "choose [sic] to conduct a sham investigation and did not actually verify the legitimacy of the application for credit or look at the records in its possession which would have verified that Garland did not apply for a loan to purchase an RV." Filing 32 at 26 (¶ 58). The purported letter that U.S. Bank issued relating to the June dispute states,

> [U.S. Bank] received your dispute regarding the account referenced [in the letter]. [U.S. Bank] reviewed the information and determined that the information submitted to the consumer reporting agencies is accurate. There will be no changes to reporting and we are closing this dispute request.

Filing 32 at 73. The letter does not contain any other information pertinent to the Proposed Complaint. Filing 32 at 73. Garland maintains that "[t]o this very date and at least through October of 2025 Defendant U.S. Bank continues to falsely report to consumer credit reporting agencies [(CRAs)] that Garland defaulted on credit issued by US Bank issued in his name to purchase an RV." Filing 32 at 22–23 (¶ 45).

Garland also references a "consent order" that U.S. Bank and the Consumer Financial Protection Bureau purportedly agreed to on July 28, 2022. Filing 32 at 29 (¶ 72). Although Garland

does not attach the consent order to his Proposed Complaint, he alleges that the consent order was based on the "very business practices . . . that are at issue in this case." Filing 32 at 30 (¶ 73). Among other things, Garland alleges that the CFPB "found" in the consent order that "US Bank issued credit to consumers (like Garland) without their knowledge and consent." Filing 32 at 31 (¶ 76).

### B.  Procedural Background

Garland filed his initial Complaint against U.S. Bank on May 5, 2025. Filing 1. Defendant U.S. Bank filed a motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and a brief in support of that motion on May 30, 2025. Filing 4; Filing 5. On July 30, 2025, Garland filed the operative complaint, the Amended Complaint, against U.S. Bank and a new defendant, RV Retailer. Filing 12. The Court denied U.S. Bank's July 30, 2025, Motion to Dismiss without prejudice to reassertion as to the Amended Complaint. Filing 13.

Defendant U.S. Bank filed a Motion to Dismiss the Amended Complaint and a supporting brief on October 3, 2025. Filing 23; Filing 26. Defendant RV Retailer filed a motion to dismiss the Amended Complaint and a supporting brief on October 3, 2025. Filing 27; Filing 30. Garland did not file a response to either Motion to Dismiss. Instead, on October 24, 2025, Garland filed a "Motion for Leave to Amend [Amended] Complaint and Add Parties" (Motion for Leave to Amend) and a brief in support of the motion. Filing 31; Filing 33. That same day, Garland filed a declaration in support of the Motion for Leave to Amend, which included *inter alia* the Proposed Complaint. Filing 32.

Garland raises eight proposed causes of action in his Proposed Complaint. Filing 32. Garland's first proposed cause of action alleges a violation of the Fair Credit Reporting Act (FCRA). Filing 32 at 38 (¶¶ 101–109). Garland's second proposed cause of action alleges a

violation of the Truth in Lending Act (TILA). Filing 32 at 41–43 (¶¶ 110–18). The third proposed cause of action alleges a violation of the Uniform Deceptive Trade Practices Act (UDTPA). Filing 32 at 41–43 (¶¶ 119–123). The fourth proposed cause of action alleges fraud. Filing 32 at 46–47 (¶¶ 124–130). Garland's fifth proposed cause of action alleges intentional infliction of emotional distress (IIED). Filing 32 at 48–50 (¶¶ 131–137). Garland's sixth proposed cause of action alleges "Invasion of Privacy/False Light." Filing 32 at 50–51 (¶¶ 138–44). The seventh proposed cause of action alleges a violation of the Computer Fraud Abuse Act (CFAA). Filing 32 at 52–54 (¶¶ 145–150). Garland's final proposed cause of action seeks a declaratory judgment. Filing 32 at 54–55 (¶ 151).

On October 31, 2025, Defendants jointly filed a reply brief in support of their respective motions to dismiss. Filing 34. On November 7, 2025, Defendants jointly filed a brief opposing Garland's Motion for Leave to Amend. Filing 35. Garland filed a reply brief in support of his Motion for Leave to Amend on November 21, 2025. Filing 38. On December 15, 2025, Defendants jointly filed a motion to strike[3] Garland's November 21, 2025, reply brief and a supporting brief. Filing 39. On December 19, 2025, Garland filed a brief opposing Defendants' Motion to Strike. Filing 41. On December 29, 2025, Defendants filed a reply brief in support of their Motion to Strike Garland's reply brief. Filing 42. On February 13, 2026, Garland filed a "Notice Regarding Status of Briefing and Request for Oral Argument."[4] Filing 43.

---

[3] Defendants' December 15, 2025, motion is entitled, "Defendants' Motion to Strike Plaintiff's Reply Brief (Filing No. 38) or to Have the Court Disregard that Brief's Improper Arguments, or to Permit Defendants to File a Surreply Brief." Filing 39 at 1. The Court will refer to that Motion as Defendants' Motion to Strike.

[4] Garland requests oral argument on the grounds that oral argument may "assist the Court in navigating the briefing on the pending motions." See Filing 43 at 1–3. Oral argument is specifically requested "[i]f the Court is inclined to deny leave to amend or to grant the motions to dismiss." Filing 43 at 3. The local rule on motion practice states that "[i]n general the court does not allow oral argument or evidentiary hearings on motions. The party requesting oral argument on an evidentiary hearing must state . . . why argument or a hearing is necessary." NECivR 7.1(e). Oral

8

## II.  LEGAL ANALYSIS

The Court will address the pending motions in reverse chronological order. Thus, the Court first assesses Defendants' Motion to Strike. Filing 39. The Court does so to determine what arguments relating to Garland's Motion to Amend the Court can Properly Consider.

### A.  Defendants' Motion to Strike is Denied

Defendants filed a joint motion to "(a) strike Plaintiff's Reply Brief (Filing No. 38), which contains improper new arguments; (b) have the Court disregard that Reply Brief, or (c) alternatively, permit Defendants to file a surreply brief." Filing 39 at 1. Defendants assert that one of the above options should be granted because Garland's reply brief "contained new arguments in violation of governing precedent and NECivR 7.1(c)(2)." Filing 39 at 1; Filing 40 at 3–5. Defendants assert that Garland waived arguments relating to whether his proposed amendments are futile when he failed to make a meaningful argument relating to futility in his initial brief supporting his Motion for Leave to Amend. Filing 40 at 4.

Among other grounds, Garland defends his reply brief on the basis that its arguments relating to futility address arguments raised in Defendants' response brief. Garland states,

> Defendants' argument that the Plaintiff is raising "new" arguments is wrong. There are no "new" arguments being raised for the first time. Plaintiff is properly making arguments that "relate to the opposing party's response" and such arguments "related to the [Defendants[']]" opposition arguments wherein they purport that allowing the proposed amended pleading would be futile. Rule 7.1(c) explicitly allows for arguments which "[A]ddress factual or legal issues raised in the opposing brief...."

---

argument is not necessary for the Court to navigate the briefing in this case. Further, the Court is not denying leave to amend or granting the pending motions to dismiss. Therefore, Garland's request for oral argument is denied.

Filing 41 at 5. Garland further states that "[n]o precedent exists which places a burden on a party moving for leave to amend to show a proposed amended complaint is not futile as a preliminary matter." Filing 41 at 5.

In reply, Defendants assert *inter alia* that "[Garland] incorrectly argues that he preserved the issue of futility in his brief in support of his motion for leave to amend," as "[Garland's] opening brief in support of his motion for leave to amend said nothing about why his proposed pleading would survive Defendants' arguments for dismissal. That silence constitutes waiver." Filing 42 at 4–5.

"Generally, 'arguments are not entertained when raised for the first time in a reply brief.'" *Nat'l Indem. Co. v. Global Reinsurance Corp. of Am.*, 8:22CV199, 2025 WL 2879223, at *31 (D. Neb. June 10, 2025) (quoting *ProMove, Inc. v. Siepman*, 355 F.Supp.3d 816, 823 (D. Minn. 2019)); NECivR 7.1(c)(2). "The reply brief . . . must address factual or legal issues raised in the opposing brief. Without leave of court, a reply brief may not raise new grounds for relief or present matters that do not relate to the opposing party's response." NECivR 7.1(c)(2). "District courts have broad discretion to . . . enforce (or not enforce) local rules." *Smith v. Insley's Inc.*, 499 F.3d 875, 879 (8th Cir. 2007).

The Court denies Defendants' motion because Garland does not raise new arguments in his reply brief. The Court notes that neither Defendant asserted that the Amended Complaint, which was the subject of their Motions to Dismiss, was futile. *See* Filing 26 *passim*; Filing 30 *passim*. Even if they had asserted futility of the Amended Complaint, those arguments would not have related to the Proposed Complaint, so that the Defendants would not have put the futility of the Proposed Complaint at issue. Garland's reply brief addresses legal issues concerning futility raised for the first time in Defendants' opposing brief attacking the Proposed Complaint.

10

"Futility is a valid basis for denying leave to amend." *Munro*, 899 F.3d at 589. Defendants make the futility-based argument in their response brief, saying that all the Proposed Complaint's claims are futile and that Garland's Motion for Leave to Amend should therefore be denied. *See* Filing 35 at 3. Garland's reply brief responds to this legal issue raised by Defendants by explaining how, among other things, the various claims included in the Proposed Complaint are not futile. NECivR 7.1(c)(2) ("The reply brief . . . must address factual or legal issues raised in the opposing brief. Without leave of court, a reply brief may not raise new grounds for relief or present matters that do not relate to the opposing party's response."); Filing 38 at 3–13. Accordingly, the Court denies Defendants' Motion to Strike because Garland's reply brief complies with NECivR 7.1(c)(2).

### B. Standards for Leave to Amend

The Court now assesses whether Garland should be granted leave to amend the Amended Complaint. As Garland has already amended his complaint once as a matter of course, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Eighth Circuit Court of Appeals has explained, even though Rule 15(a)(2) states a liberal standard for leave to amend, "denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 646 n.4 (8th Cir. 2021) (internal quotation marks omitted) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557–58 (8th Cir. 2006)); *see Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018).

"[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Munro*, 899 F.3d at 589 (alteration in original) (quoting *Cornelia I. Crowell GST Tr.*, 519 F.3d at 782). To determine if the proposed amendment would withstand such a motion to dismiss, the court must take "the factual allegations in the [amended] complaint as true and afford[ ] the non-moving party all reasonable inferences from those allegations." *Id.* (quoting *Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012)). The court must then decide if the amended pleading states "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hillesheim*, 897 F.3d at 955 (quoting *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc), in turn quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court will apply these standards to each of Garland's claims in turn.

### C.  Six Proposed Claims are Futile or Abandoned

The Court notes as a preliminary observation that Garland does not offer arguments in support of the amendment to any specific claims. *See* Filing 33. Rather, Garland argues that his Motion for Leave to Amend should be granted under Federal Rule of Civil Procedure 15(a)'s liberal amendment standard. Filing 33 at 4–5. Garland also argues that the Proposed Complaint "add[s] parties which Defendants claim are indispensable parties" and that his Motion for Leave to Amend should therefore be granted. *See* Filing 33 at 3.

The Court's first addresses the Proposed Complaint's futile claims. Therefore, the Court begins its analysis with the Proposed Complaint's third cause of action.

### 1. *Uniform Deceptive Trade Practices Act*

The Proposed Complaint's third cause of action alleges a violation of the Uniform Deceptive Trade Practices Act (UDTPA) against U.S. Bank. Filing 32 at 41–43 (¶¶ 119–123).

#### a. The Parties' Arguments

Defendants argue that the UDTPA does not apply to U.S. Bank because Garland has made "no plausible allegations about a 'direct connection to any deceptive trade practices conducted in whole or in part within [Nebraska]," which the UDTPA purportedly requires here. Filing 35 at 10 (citing Neb. Rev. Stat. § 87-304(c)). Defendants state that "Plaintiff confirms U.S. Bank is located outside of Nebraska and the RV transaction that occurred in October 2019 (including his newly alleged scheme involving a now deceased employee of RV Retailer) occurred in Texas." Filing 35 at 10. Therefore, Defendants conclude that the claim against U.S. Bank is not plausibly pleaded, as the Proposed Complaint "still fails to set forth any plausible allegations to satisfy the 'direct connection' to Nebraska required to trigger the application of the UDTPA." Filing 35 at 10.

In reply, Garland states,

> Plaintiff's [UDTPA] claims are directly connected to Nebraska. Plaintiff is domiciled in Nebraska and U.S. Bank is authorized to do business in the state of Nebraska purposefully availing themselves of the laws of the state of Nebraska.

Filing 38 at 8.

#### b. Garland's Proposed UDTPA Claim is Futile

Plaintiff's argument that the claim is plausibly pleaded is unavailing. The UDTPA states,

> The Uniform Deceptive Trade Practices Act shall apply to deceptive trade practices conducted in whole or in part within the State of Nebraska against residents or nonresidents of this state. The act shall also apply to deceptive trade practices conducted outside of Nebraska against residents of this state if there is a direct connection to any deceptive trade practices conducted in whole or in part within this state.

Neb. Rev. Stat. § 87-304(c). The Proposed Complaint appears to allege that "[U.S. Bank's] continued insistence that it has 'determined that the information submitted to the consumer reporting agencies is accurate' is a deceptive trade practice" and forms the basis of a UDTPA claim. *See* Filing 32 at 44–45 (¶ 119). Garland does not allege that U.S. Bank's alleged conduct occurred "in whole or in part within the State of Nebraska." *See generally* Filing 32. Garland similarly does not allege that, if the alleged conduct took place outside of Nebraska, any "deceptive trade practices conducted in whole or in part within [Nebraska]" could form a "direct connection" with the alleged conduct. Neb. Rev. Stat. § 87-304(c); *see generally* Filing 32. Garland appears to concede that he must show a direct connection to Nebraska in his reply brief, saying that his "[UDTPA] claims are directly connected to Nebraska." Filing 38 at 8. However, Garland fails to show such connection when asserting that he "is domiciled in Nebraska and U.S. Bank is authorized to do business in the state of Nebraska purposefully availing themselves of the laws of the state of Nebraska" because the direct connection must be to a "deceptive trade practice conducted in whole or in part within [Nebraska]." Filing 38 at 8; Neb. Rev. Stat. § 87-304(c). Therefore, Garland's proposed UDTPA claim is not plausibly pleaded and is futile. *Munro*, 899 F.3d at 589; *Kezhaya*, 78 F.4th at 1051.

### 2. Fraud

The Proposed Complaint's fourth cause of action alleges a fraud claim against U.S. Bank, RV Retailer, and Marr. Filing 32 at 46–47 (¶¶ 124–130).

#### a. The Parties' Arguments

Defendants argue *inter alia* that Garland fails to plausibly plead that he relied on a "representation or misrepresentation of U.S. Bank, RV Retailer, or Marr. Reliance is a foundational element of fraud." *See* Filing 35 at 11 (citing *deNourie & Yost Homes, LLC v. Frost,*

854 N.W.2d 298, 311 (Neb. 2014)). According to Defendants, "Plaintiff's Proposed Second Amended Complaint fails to allege specific facts showing Plaintiff's actual and justifiable reliance on any alleged misrepresentations at the time it was made." Filing 35 at 11 (citing Filing 32 at 46–47). Defendants assert that "references to CRAs or other 'third parties' relying on alleged misrepresentations of 'Defendants' cannot support a fraud claim as a matter of law where Plaintiff does not allege, with particularity, his own actual reliance." Filing 32 at 11–12 (citing *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 327–28 (Neb. 2010)). Defendants conclude, "These glaring deficiencies in Plaintiff's updated allegations are not sufficient to avoid a motion to dismiss and leave to amend should be denied." Filing 35 at 12 (citing *Ascente Bus. Consulting, LLC v. DR myCommerce*, 9 F.4th 839, 845–46 (8th Cir. 2021)).

In reply, Garland argues that "[he] relied upon U.S. Bank to report to third parties accurate information in order to maintain a [sic] accurate credit. Furthermore, Plaintiff relied upon U.S. Bank to comply with the laws in verifying identity before issuing credit." Filing 38 at 9.

      b.   Garland's Proposed Fraud Claim is Futile

Another judge of this Court has previously stated,

> To succeed on a claim of fraud under Nebraska law, a plaintiff must prove "(1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it should be relied upon; (5) that the party reasonably did so rely; and (6) that he or she suffered damage as a result."

*LOL Fin. Co. v. Paul Johnson & Sons Cattle Co., Inc.*, 4:09CV3224, 2010 WL 11523877, at *5 (D. Neb. May 7, 2010) (citing *Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 12–13 (Neb. 2008)). With respect to the reliance element specifically, the Nebraska Supreme Court has stated that "plaintiffs cannot show reliance on a misrepresentation that never reached them and of which they had no knowledge." *Knights of Columbus Council 3152*, 791 N.W.2d 317, 328 (Neb. 2010).

15

The only pleading relating to "reliance" that is specifically located in Garland's proposed fraud claim says,

> 127.    Third parties have relied on the false material fact that US Bank issued Garland credit that he authorized because Garland has been unable to obtain credit to purchase a home for himself because his credit reports falsely show he defaulted on his credit agreement with US Bank.

Filing 32 at 46–47 (¶ 127). Garland's account of his proposed fraud claim appears to be that Defendants made certain misrepresentations, third-parties relied on those alleged misrepresentations, and Garland suffered damage because the third-parties relied on the alleged misrepresentations. *See* Filing 32 at 46. A plausibly pleaded fraud claim must, however, show that the "the plaintiff did so rely on [the alleged misrepresentation]." *Knights of Columbus Council 3152*, 791 N.W.2d at 331. Nowhere in the Proposed Complaint does Garland say that he specifically relied on a representation. *See* Filing 32. Likewise, "plaintiffs cannot show reliance on a misrepresentation that never reached them and of which they had no knowledge." *Knights of Columbus Council 3152*, 791 N.W.2d at 328. However, Garland clearly maintains that he had no knowledge of any misrepresentations made in the course of the RV transaction. Filing 32 at 19 (¶ 28) ("Garland did not have knowledge of [any of the events relating to the alleged October 3, 2019, RV transaction] until Derek in a telephone conversation in July of 2024 told him [what] occurred.").

Arguments made in Garland's reply brief that "[he] relied upon U.S. Bank to report to third parties accurate information in order to maintain a [sic] accurate credit" and "relied upon U.S. Bank to comply with the laws in verifying identity before issuing credit" are unavailing because they do not show Garland relied on a misrepresentation. Filing 38 at 9; *Knights of Columbus Council 3152*, 791 N.W.2d at 328 ("[P]laintiffs cannot show reliance on a misrepresentation that never reached them and of which they had no knowledge."); Filing 32 at 19 (¶ 28) ("Garland did

16

not have knowledge of [any of the events relating to the alleged October 3, 2019, RV transaction] until Derek in a telephone conversation in July of 2024 told him [what] occurred."). Garland's proposed fraud claim is therefore not plausibly pleaded and futile. *Knights of Columbus Council 3152*, 791 N.W.2d at 331; *Munro*, 899 F.3d at 589.

### 3. Intentional Infliction of Emotional Distress

Count V of the Proposed Complaint alleges intentional infliction of emotional distress (IIED) against U.S. Bank, RV Retailer, and Marr. Filing 32 at 48–50 (¶¶ 131–137).

#### a. The Parties' Arguments

Defendants argue that the IIED claim fails because the "type of conduct [alleged] does not rise to the level of an IIED claim. . . ." Filing 35 at 13. According to Defendants,

> There is a 'high hurdle' for Plaintiff to establish IIED where he must allege (1) intentional or reckless conduct (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.

Filing 35 at 12 (citing *Starks v. TULA Life, Inc.*, 684 F.Supp.3d 941, 950–51 (D. Neb. 2023)). Defendants argue on this basis that, even when taking Garland's allegations as true, "this type of conduct does not rise to the level of IIED claim." Filing 35 at 12.

In reply, Garland argues that whether the distress he alleges "rises to the level of IIED" "is a factual question which must be left for the trier of fact and not to the opinions of Defendants." Filing 38 at 10. Garland argues that Nebraska caselaw supports his position, saying the *La Salle Extension* "court determined that writing 37 letters over a nearly two years [sic] was 'wholly unjustified and inexcusable . . . whether the sum claimed was justly due or not[.]" Filing 38 at 10 (citing *La Salle Extension Univ. v. Fogarty*, 253 N.W 424, 425 (Neb. 1934)). Garland accordingly

maintains that "publication to multiple credit reporting agencies on a continuing basis of a false debt which ruins [a] person[']s credit score could rise to the level of IIED." Filing 38 at 10.

b.    Garland's Proposed IIED Claim is Futile

"A plaintiff bringing a claim of [IIED] under Nebraska law must clear 'a high hurdle.'" *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (quoting *Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005)). To state a claim, the plaintiff must plausibly allege:

> (1) intentional or reckless conduct (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.

*Roth v. Wiese*, 716 N.W.2d 419, 431 (Neb. 2006); *see also KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 600 (8th Cir. 2021) (citing Roth for the elements of an IIED claim). It is up to a court to first decide whether a defendant's conduct may be outrageous and extreme enough to be actionable. *See Brandon ex rel. Est. of Brandon v. Cnty. of Richardson*, 624 N.W.2d 604, 621 (Neb. 2001) ("[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so."). "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of the particular case." *Roth*, 716 N.W.2d at 432. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society do not rise to the level of extreme and outrageous conduct." *Heitzman*, 705 N.W.2d at 431.

Garland's allegations do not plausibly meet the high standard required to make a claim for intentional infliction of emotional distress under Nebraska law. Allegations that Marr sold Garland's son an RV by way of financing that Garland did not authorize and that U.S. Bank's

18

collection department has contacted Garland for repayment on an unspecified number of occasions since October 2024 do not plausibly constitute conduct "that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *See* Filing 32 at 16, 19, 21 (¶¶ 16, 26, 29, 35); *Roth*, 716 N.W.2d at 431. Garland leaves the number of times he has been allegedly dunned unspecified and similarly leaves the content of the dunning phone calls and letters left to the imagination. Filing 32 at 23 (¶ 47). The fact that U.S. Bank has continued to report an unpaid balance to CRAs for credit that was allegedly not authorized by Garland also does not elevate the claim to a level of plausibility under Nebraska's demanding IIED standard. *Richardson*, 2 F.4th at 1068; Filing 32 at 48 (¶ 131).

Nebraska law likewise does not support the notion that plaintiff has plausibly pleaded a claim for intentional infliction of emotional distress *See, e.g., Davis v. Texaco, Inc.*, 313 N.W.2d 221, 222–23 (Neb. 1981) (holding that the plaintiff, who suffered burns from splashing radiator fluid and had to remove shirt and part of her undergarments, did not experience outrageous conduct from the defendant who gave the plaintiff a dirty fender cover after she made three requests for a towel, disabled her vehicle until she gave back the cover, and then provided an old Texaco shirt after allowing her to leave); *Foreman v. AS Mid-Am., Inc.*, 586 N.W.2d 290, 296–97, 306 (1998) (holding that a "campaign" of "verbal, physical, and psychological" harassment and intimidation perpetrated by union members against nonunion members was not "so outrageous and extreme"). In the commercial context, the Nebraska Supreme Court has considered whether alleged bad faith litigation tactics that put "psychological pressure" on the parents of a deceased daughter "to settle the wrongful death claim for sums considerably less than its value" could constitute an IIED claim. *Braesch v. Union Ins. Co.*, 464 N.W.2d 769, 772 (Neb. 1991), *disapproved on other grounds*,

19

*Wortman v. Unger*, 578 N.W.2d 413 (Neb. 1998). The Nebraska Supreme Court concluded, "The amended petitions do not allege conduct sufficiently outrageous. . . ." *Id.* at 779.

In contrast, the only caselaw Garland cites to support his position that Defendants' conduct is sufficiently outrageous and extreme does not exactly stand for the proposition he asserts. Filing 38 at 10 (citing *La Salle Extension Univ.*, 253 N.W. 424). Garland asserts that the *La Salle Extension* "court determined that writing 37 letters over a nearly two years [sic] was 'wholly unjustified and inexcusable. . . whether the sum claimed was justly due or not[.]'" Filing 38 at 10 (citing *La Salle Extension Univ.*, 253 N.W. at 426). However, the quote Garland mines from the *La Salle Extension* court leaves out important context explaining why the court found the conduct sufficiently outrageous for purposes of the IIED claim. Filing 38 at 10; *La Salle Extension Univ.*, 253 N.W. at 426. Relating to the part of the opinion cited by Garland, the *La Salle* court stated,

> Certainly the series of thirty-seven letters written to the defendant, which are preserved in the bill of exceptions, and the letter written to his employer and the two written to his neighbors, and the adoption of pseudo-legal forms, was wholly unjustified and inexcusable. No reasonable mind could reach any other conclusion than that they were written designedly and for the purpose of harassing the defendant until he would meet their demands, whether the sum claimed was justly due or not.

*La Salle Extension Univ.*, 253 N.W. at 426. The court stated the factual backdrop for the decision even more fully earlier in the opinion, saying,

> About forty [collection letters] are contained in the bill of exceptions. These letters vary from moderate reminders of an unpaid balance to accusations of dishonesty and moral turpitude and threats, and were such as were well calculated to coerce the defendant into payment. Some of them were in lurid envelopes, and in one both the letterhead and the envelope bore a facsimile of lightning about to strike some one. One of them read as follows: "Honest men pay their debts. Dishonest men do not pay their debts. You owe us $140. Classify yourself." One of them was a garnishment notice with the name of his employer in the heading of the petition. One was a deep red paper and labeled: "Final notice before legal action." The [letters' author] also wrote [the recipient's] employer, the Nebraska Power Company, as well as his neighbors living on either side of him.

*La Salle Extension Univ.*, 253 N.W. at 426. These facts led the court to conclude that the letters were "wholly unjustified and inexcusable." *Id.* These facts go well beyond those alleged in the Proposed Complaint. *See* Filing 32.

Garland fails to plausibly allege that each of the Defendants' actions were "so outrageous in character and so extreme in degree" to state an actionable IIED claim. *Hillesheim*, 897 F.3d at 955; *see Brandon ex rel. Est. of Brandon*, 624 N.W.2d at 621 ("[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so.").

4. *"Invasion of Privacy/False Light"*

What Garland alleges in his Proposed Complaint's sixth cause of action is unclear. *See* Filing 32 at 50–51 (¶¶ 138–44). The sixth cause of action cites Neb. Rev. Stat. § 20-203, which concerns invasion of privacy based on "trespass or intru[sion] upon a person's solitude." Neb. Rev. Stat. § 20-203; Filing 32 at 50–51 (¶¶ 138–39). However, the content of the proposed pleading leans heavily on statutory language relating to an invasion of privacy based on placing the plaintiff in a false light. *Compare* Filing 32 at 51 (¶ 140) ("The above publications place Garland in a false light that is highly offensive to a reasonable person. . . .") *with* Neb. Rev. Stat. § 20-204 ("Any person, firm, or corporation which gives publicity to a matter concerning a natural person that places that person before the public in a false light is subject to liability for invasion of privacy, if: (1) The false light in which the other was placed would be highly offensive to a reasonable person; and (2) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."). The title of Count VI bears the name, "Invasion of Privacy/False Light." Filing 32 at 50–51 (¶¶ 138–144). Thus, Garland's "false

21

light" claim relies on § 20-204, not § 20-203.[5] Garland's brief in support of his motion for leave to amend the Amended Complaint does not clarify the section on which this proposed claim relies. Filing 33. Garland's reply brief similarly fails to meaningfully clarify the claim. Filing 38. However, Defendants, like the Court, understand the Proposed Complaint to allege a claim under § 20-204. Filing 35 at 14 ("First, while Plaintiff cites to Neb. Rev. Stat. § 20-203 for support, that section is separate from a false-light claim, governed by Neb. Rev. Stat. § 20-204.").

### a.   The Parties' Arguments

Among other things, Defendants argue, "In order to recover under § 20-204, the matter must be communicated to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Filing 35 at 15 (emphasis omitted) (citing *Wilkinson v. Methodist, Richard Young Hosp.*, 612 N.W.2d 213, 216–17 (Neb. 2000)). Defendants assert that Garland does not plausibly allege the kind of publication needed to assert a viable claim. Filing 35 at 15.

Garland fails to offer any argument in support of his proposed sixth cause of action in his reply brief. *See* Filing 38.

### b.   Garland's Proposed "Invasion of Privacy/False Light" Claim is Abandoned

Garland has failed to explain how his proposed "Invasion of Privacy/False Light" claim is viable in the face of Defendants' challenges. Filing 38. "A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *See Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985). Garland's failure to explain in response to Defendants' arguments how his proposed claim could survive a motion to dismiss constitutes

---

[5] The reference to § 20-203 may be a typographical error.

abandonment. *Nine Stories, LLC v. City of David City*, No. 8:23-CV-344, 2024 WL 229464, at *7 (D. Neb. Jan. 22, 2024) (citing *Jasperson*, 765 F.2d at 740) ("Nine Stories' failure to explain in response to Defendants' arguments how it stated a claim under § 1983 constitutes abandonment."); *see Murr v. Case New Holland, Inc.*, No. 4:08CV3025, 2008 WL 2626999, at *4 (D. Neb. June 26, 2008) ("To the extent that these or any other claims were raised, Plaintiff has abandoned them by failing to brief them.") (collecting cases).

### 5. Computer Fraud Abuse Act

Garland's seventh proposed cause of action alleges a violation of the Computer Fraud Abuse Act (CFAA) against U.S. Bank, RV Retailer, and Marr. Filing 32 at 52–54 (¶¶ 145–150).

#### a. The Parties' Arguments

Defendants argue that Garland's proposed CFAA claim is futile. Filing 35 at 16. According to Defendants, "[l]iability only attaches for alleged improper access of financial records or credit under CFAA if Defendant 'intentionally [accessed] a computer without authorization' or 'exceed[ed] authorized access' in obtaining such information." Filing 35 at 17 (citing 18 U.S.C. § 1030(a)(2)(A) (emphasis omitted). However, Defendants assert that, "[o]ther than unsupported conclusions (i.e., Defendants 'exceed their authority'), Plaintiff fails to plead how any Defendant either (1) acted without authorization to access Plaintiff's credit information as required under the CFAA or (2) exceeded authorization in the course and scope of their actions relating to the purchase of the RV in October 2019." Filing 35 at 17. Specifically, Defendants argue that Garland fails to plausibly allege that Marr did not have permission to access credit reports on the credit bureau computer systems or that "any credit bureau ever restricted Marr's authorization to credit reports." *See* Filing 35 at 17–18. Therefore, Defendants conclude that Garland fails to allege a plausible claim to relief under his proposed CFAA claim. Filing 35 at 16–17.

23

In reply, Garland asserts that the pleaded facts, "if accepted as true, would lead to liability under the [CFAA]" because Garland's Proposed Complaint "alleges facts that Defendants did not have authorization to access Plaintiff's credit and in fact was not present at the transaction to give proper authorization." Filing 38 at 11.

### b.  Garland's Proposed CFAA Claim is Futile

"The CFAA is a 1986 statute intended to combat the scourge of computer hacking." *Walling Co. v. Kesterson*, 8:25CV294, 2025 WL 2463137, at *19 (D. Neb. Aug. 26, 2025) (citing *Van Buren v. United States*, 593 U.S. 374, 378 (2021)). Although a violation of the CFAA can lead to criminal penalties that include "imprisonment for up to 10 years," the CFAA's private right of action is relevant in this case. 18 U.S.C. § 1030(c)(2) and (g). According to section 1030(g), "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Garland alleges that section 1030(a)(2)(A) was violated, see Filing 32 at 53 (¶ 148), which states,

> Whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n) of title 15, or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) [violates the CFAA].

18 U.S.C. § 1030(a)(2)(A).

"Provisions defining 'damage' and 'loss' specify what a plaintiff in a civil suit can recover." *Van Buren*, 593 U.S. at 391; 18 U.S.C. § 1030(g). "[T]he term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Loss means,

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11). "The statutory definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting 'damage and loss' in this way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Van Buren*, 593 U.S. at 391 (citing *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020)).

Garland fails to plead a plausible claim to relief under the CFAA for two related reasons. The first reason is that Garland does not plausibly allege that Marr "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access." 18 U.S.C. § 1030(a)(2)(A); *see* Filing 32. It is again unclear what exactly Garland alleges in his Proposed Complaint. Filing 32 at 53 (¶ 148). The "without authorization" and "exceeds authorized access" clauses of subsection (a)(2) "specify two distinct ways of obtaining information unlawfully." *Van Buren*, 593 U.S. at 389. Garland does not clearly state which clause Marr's conduct allegedly falls under. *See* Filing 32 at 53 (¶ 148). Garland's supporting brief provides no attempt at clarification, and his reply brief similarly fails to state the pertinent clause with any kind of specificity aside from saying that "[Marr] and his principals, US Bank and RV Retailer (who he was acting as authorized agent of) exceeded their authority in accessing Garland's credit report." Filing 32 at 53 (¶ 148).

Garland failed to plead a claim under both the CFAA's "without authorization" clause or "exceeds authorized access" clause. *Van Buren*, 593 U.S. at 381, 389–393 ("But we start where we always do: with the text of the statute."); *see* Filing 32. One can be subject to liability under the CFAA when he or she "intentionally accesses a computer without authorization or exceeds authorized access." *See* 18 U.S.C. § 1030(a)(2). According to the United States Supreme Court,

25

"[i]n the computing context, 'access' references the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases." *Van Buren*, 593 U.S. at 388. Garland's Proposed Complaint alleges that Marr accessed a part of the "computer systems of the credit bureaus" to obtain Garland's credit reports. *See* Filing 32 at 17 (¶ 20). However, nowhere in the Proposed Complaint does Garland plausibly allege that Marr did not have access to the "computer systems of the credit bureaus," which Marr presumably used to obtain credit reports regularly in his employment at RV Retailer before his death. *See* Filing 32. Additionally, the Proposed Complaint does not plausibly allege that Marr "exceed[ed] authorized access" by "access[ing] a computer with authorization but then obtain[ing] information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. at 396; *see* Filing 32. That is, Garland fails to plausibly allege that Marr had some authorized access to the credit bureaus' computer systems but did not have access the particular areas he accessed.[6] *Van Buren*, 593 U.S. at 396 ("In sum, an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him."); *see* Filing 32.

Garland's proposed CFAA claim also fails because he does not plausibly allege that he has suffered the kind of "damage" or "loss" required to state a plausible clam under 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss . . . may maintain a civil action. . . ."). Again, "[t]he statutory definitions of 'damage' and 'loss' . . . focus on technological harms—such as the

---

[6] Assuming the Proposed Complaint can even be said to plausibly allege that Marr used the credit bureaus' computer systems for an improper purpose, the Supreme Court has made clear that such conduct does not show that the individual "exceeds authorized access" for purposes of CFAA liability. *Van Buren*, 593 U.S. at 396.

corruption of files—of the type unauthorized users cause to computer systems and data." *Van Buren*, 593 U.S. at 391. Garland, however, alleges that he "has suffered damages in excess of $5,000 as a result of the unauthorized access in that he has lost the ability to purchase a home and US Bank has caused him to be liable for the purchase of a the [sic] RV which far exceeds the $5,000 damage requirement. . . ." Filing 32 at 53–54 (¶ 149). Put simply, Garland has not plausibly alleged the kind of "damage" or "loss" the statute requires as his alleged loss has nothing to do with the type of loss the statute identifies as compensable. 18 U.S.C. § 1030(e)(8) and (11). For these reasons, Garland's proposed CFAA claim fails to state a plausible claim to relief and is therefore futile. *Munro*, 899 F.3d at 589.

### 6. Declaratory Judgment

Garland's eighth proposed cause of action "requests a declaration and declaratory judgment from the court that neither [proposed nominal defendant] Derek or Garland is obligated to U.S. Bank for the purchase of the RV due to the illegal acts of US Bank and its agents [sic] RV [R]etailer." Filing 32 at 54–55 (¶ 151). The proposed declaratory judgment claim is raised "against all [proposed] defendants including [proposed] nominal defendant Derek." Filing 32 at 54 (reduced from all capitals)

#### a. The Parties' Arguments

Defendants argue that Garland's proposed declaratory judgment claim is futile. *See* Filing 35 at 19. Defendants state,

> Putting aside the dubious argument that Plaintiff seeks relief for himself and a newly added 'nominal' defendant, Count VIII has no facts plead [sic] to assert any entitlement to a declaration under Neb. Rev. Stat. § 25-21,149, how Plaintiff (and his son) are entitled to such declaration, nor any other facts to even state a claim.

Filing 35 at 19. Defendants further state that the "conclusory claim fails independently for these omissions and because there are no actionable claims either in Plaintiff's First Amended Complaint

27

or [Proposed Complaint] to support any declaratory relief (i.e., there is no justiciable controversy)." Filing 35 at 19.

Garland's reply brief fails to address or defend the proposed declaratory judgment claim. Filing 38.

### b.  Garland's Proposed Declaratory Judgment Claim is Abandoned

Garland has failed to explain how his proposed declaratory judgment claim is viable in the face of Defendants' challenges. Filing 38. "A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." See *Jasperson*, 765 F.2d at 740. Garland's failure to explain in response to Defendants' arguments how his proposed claim could survive a motion to dismiss constitutes abandonment. *Nine Stories, LLC*, 2024 WL 229464, at *7 (citing *Jasperson, 765 F.2d at 740*) ("Nine Stories' failure to explain in response to Defendants' arguments how it stated a claim under § 1983 constitutes abandonment."); *see Murr*, 2008 WL 2626999, at *4 ("To the extent that these or any other claims were raised, Plaintiff has abandoned them by failing to brief them.") (collecting cases).

### D.  The Proposed Complaint's FCRA and TILA Claims are Not Futile

#### 1.  *Fair Credit Reporting Act*

The Court turns its attention to the Proposed Complaint's two plausibly pleaded claims, the Proposed Complaint's first and second causes of action, which allege a violation of the Fair Credit Reporting Act (FCRA) against U.S. Bank under 15 U.S.C. § 1681s-2(b) and a violation of the Truth in Lending Act (TILA) against U.S. Bank. Filing 32 at 38 (¶¶ 101–109), 41–43 (¶¶ 110–18). The Court first addresses the Proposed Complaint's FCRA claim.

a. The Parties' Arguments

Defendants argue that the Proposed Complaint's FCRA claim against U.S. Bank fails as a matter of law for two reasons. Filing 35 at 6. First, Defendants argue that, to the extent Garland alleges that U.S. Bank violated its duty under 15 U.S.C. § 1681s-2(a) to furnish accurate information, the claim must be dismissed because no private right of action exists to enforce that duty. Filing 35 at 6. Second, Defendants assert that the Proposed Complaint does not plausibly allege that U.S. Bank violated its duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation. Filing 35 at 6. Defendants maintain,

> Even assuming [the Proposed Complaint's allegations that an online dispute was filed with Equifax in May 2025 and that all three credit bureaus received a written dispute in August 2025] allege notice from a CRA to U.S. Bank, which Defendants dispute, Plaintiff's [Proposed Complaint] still fails to plausibly allege that U.S. Bank failed to conduct a reasonable investigation."

Filing 35 at 7. Defendants argue that the Proposed Complaint fails to plausibly allege that U.S. Bank violated its section 1681s-2(b) duties because "Plaintiff affirmatively acknowledges that U.S. Bank investigated the complaint but only provides conclusory assertions that the investigation was 'a sham' without explaining how it failed to meet the FCRA's reasonable investigation requirement." Filing 33 at 7 (citing Filing 32 at 39). That is, "Plaintiff's third attempt at a[n] FCRA claim still fails the black letter pleading test requiring more than formulaic recitations of the elements of a claim." Filing 35 at 8 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In reply, Garland states that "[c]ivil actions are controlled by a liberal pleading regime" and argues that Defendants "attempt[] to place an erroneous 'heightened' pleadings standard for claims under the FCRA." Filing 38 at 4. Garland argues that Defendants do this by "attempt[ing] to require that Plaintiff make certain factual allegations against U.S. Bank National Association that, without discovery on the matter, would be impossible to plead." Filing 38 at 3.

b.  Garland Plausibly Alleges FCRA Violations

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007). The FCRA accordingly "places responsibilities on both consumer reporting agencies and furnishers of information. . . ." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014). Section 1681s-2 provides two categories of responsibilities for those that furnish information to CRAs. *Gorman*, 584 F.3d at 1154. Subsection (a) describes the duty of furnishers "to provide accurate information." *Id.* (citing 15 U.S.C. § 1681s-2(a)(3)). Subsection (b) provides the second duty and is triggered "'upon notice of dispute'—that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." *Id.*; *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907 (8th Cir. 2011) (saying a furnisher of credit information's duties under 15 U.S.C. § 1681s-2(b) are "triggered by notice that its information is being disputed from a CRA. . . ."). Upon receiving notice of a dispute, the furnisher has a duty to:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

The FCRA's terms do not expressly state how rigorous the investigation must be. 15 U.S.C. § 1681s-2(b). However, courts have implied a reasonableness requirement. *Anderson*, 631 F.3d at 908; *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016) ("[W]e conclude that 'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s-2(b)." (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37 (1st Cir. 2010); *Gorman*, 584 F.3d at 1157; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004))). "[T]he reasonableness of an investigation depends on the facts of the particular case. . . ." *Gorman*, 584 F.3d at 1160. Accordingly, the Eighth Circuit has stated that "[b]ecause a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA, it need investigate only 'what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'" *Anderson*, 631 F.3d at 908 (citing *Gorman*, 584 F.3d at 1157). The Sixth Circuit Court of Appeals has added, "the term 'investigation' itself denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (quoting *Gorman*, 584 F.3d at 1155–57). "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

"The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements." *Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. §§ 1681n & o). However, the private right of action for willful or negligent noncompliance is not available for claims sounding in subsection (a) except in circumstances not relevant here. *Id.* at 1154 ("However, § 1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA." (citing 15 U.S.C. § 1681s-2(c) ("Except

31

[for circumstances not relevant here], sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder.”))). Under section 1681o, the consumer can sue for negligent noncompliance of a furnisher’s subsection (b) duties. 15 U.S.C. § 1681o. Under section 1681n, the consumer can sue for willful noncompliance of a furnisher’s subsection (b) duties. 15 U.S.C. § 1681n.

“[T]o state a claim for negligent violation of the FCRA, Plaintiff must merely allege (1) a violation and (2) actual damages stemming from such violation.” *Gerena v. Freedom Mortg. Corp.*, No. 3:23cv078, 2024 WL 1023033, at *13 (E.D. Va. Mar. 8, 2024); *Sion v. SunRun, Inc.*, 2017 WL 952953, at *2 (N.D. Cal. 2017) (“To state a negligence claim under FCRA, a plaintiff must plead actual damages stemming from the defendant’s violation.”) (collecting cases). A “willful” violation of the FCRA requires an additional showing. *See Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3rd Cir. 2014). “A willful violation is one committed with actual knowledge or reckless disregard for the FCRA’s requirements.” *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021); *see also Seamans*, 744 F.3d at 868. “[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute’s terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.” *Seamans*, 744 F.3d at 868; *see also Persinger*, 20 F.4th at 1195.

The Court understands the Proposed Complaint to allege both “negligent” and “willful” theories of FCRA violations. *See* Filing 32 at 3, 38–41 (¶¶ 14, 101–109). Garland’s proposed first cause of action plausibly states a claim to relief under both theories. As an initial matter, the Court does not understand the Proposed Complaint to allege that Garland is entitled to relief under section 1681s-2(a). *See* Filing 32 at 38–41 (¶¶ 101–109). However, if the Amended Complaint

intended to make such an allegation, no private cause of action exists to enforce a furnisher's duty to report accurate information under subsection (a). 15 U.S.C. § 1681s-2(c)(1).

Garland pleads a plausible claim to relief under 15 U.S.C. § 1681s-2(b)(1)(A) for a negligent violation, as Garland generates a plausible inference that U.S. Bank failed to reasonably investigate the dispute under that section. *See Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20cv45, 2021 WL 1206800, at *9 (E.D. Va. Mar. 30, 2021) ("A plaintiff states a claim under 15 U.S.C. § 1681s-2(b)(1)(A) when he or she alleges that 'the furnisher failed to reasonably investigate the disputed information and take appropriate action based on its findings.'" (quoting *Tieffert v. Equifax Info. Servs., LLC*, No. 3:14CV609-HEH, 2014 WL 7240263, at *4 (E.D. Va. Dec. 19, 2014)). District courts have applied generous pleading standards for section 1681s-2(b)(1)(A) claims at the motion to dismiss stage, as the plaintiff is "faced with the problem of alleging what did not happen." *See Neill v. Experian Info. Sols., Inc.*, No. CV-16-04326-PHX-JJT, 2017 WL 3838671, at *3 (D. Ariz. Sept. 1, 2017); *Lovelace v. Equifax Info. Servs. LLC*, No. CV-18-04080-PHX-DWL, 2019 WL 2410800, at *6 (D. Ariz. June 7, 2019) ("Courts can't expect any more specificity regarding the unreasonableness of the investigation at the motion to dismiss stage." (citing *Neill*, 2017 WL 3838671, at *3)); *Lara v. Experian Info. Sols., Inc.*, No. 20-cv-2449-MMA, 2021 WL 2588863, at *3 (S.D. Cal. Jun. 24, 2021) ("At [the motion to dismiss stage], Plaintiff cannot be expected to plead the details of an investigation that [the defendant] undertook and Plaintiff was not privy to."); *see also Williams v. Bayview Loan Servicing, LLC*, 14-CV-7427, 2016 WL 8711209, at *6–7 (E.D.N.Y. Jan. 22, 2016) (collecting cases). "A claim arising under § 1681s-2(b) 'requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover.'" *Llewellyn v. Carrington Mortg. Servs., LLC*, 2023 WL 3734965, at *5 (W.D. Mo. Mar. 31, 2023) (internal quotation marks omitted) (quoting

33

*Edeh v. Midland Credit Mgmt., Inc.*, 748 F.Supp.2d 1030, 1039–40 (D. Minn. 2010), *aff'd*, 413 F.App'x 925 (8th Cir. 2011), in turn quoting *Chiang*, 595 F.3d at 29–30 (1st Cir. 2010)). "Further, 'a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA.'" *Llewellyn*, 2023 WL 3734965, at *5 (quoting *Anderson*, 631 F.3d at 908–09 (8th Cir. 2011)). The plaintiff must also plausibly allege actual damages to state a negligent violation. *Sion*, 2017 WL 952953, at *2 ("To state a negligence claim under FCRA, a plaintiff must plead actual damages stemming from the defendant's violation."); *Gerena*, 2024 WL 1023033, at *13 ("[T]o state a claim for negligent violation of the FCRA, Plaintiff must merely allege (1) a violation and (2) actual damages stemming from such violation."); *Llewellyn*, 2023 WL 3734965, at *5.

Garland has plausibly alleged actual inaccuracies relating to the reporting of the August 2019 transaction that could have been discovered, that U.S. Bank received notice of the dispute, and actual damages. *Llewellyn*, 2023 WL 3734965, at *5 (saying that the plaintiff must show that the furnisher received notice of the dispute from a CRA and "actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover"); *Gerena*, 2024 WL 1023033, at *13 (saying the plaintiff must allege actual damages). The Proposed Complaint alleges that Garland "fil[ed] an online dispute with Equifax in May of 2025 in accordance with the Fair Credit Reporting Act[,] informing them that he did not apply for [c]redit with U.S. Bank." Filing 32 at 25 (¶ 55). Accordingly, Garland plausibly alleges that U.S. Bank received notice of the dispute from the CRA, as "the CRA must notify the furnisher of the disputed information" "[w]hen a consumer disputes the completeness or accuracy of a credit report with a CRA." *See Abukhodeir v. AmeriHome Mortg. Co.*, Case No. 8:21-cv-563-WFJ-JSS, 2021 WL 3510814, at *2 (M.D. Fla. Aug. 10, 2021) (citing 15 U.S.C. § 1681i(a)(2) ("Before the expiration of the 5-business-day period

34

beginning on the date on which a [CRA] receives notice of a dispute from any consumer . . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute.")); Filing 32 at 25 (¶ 56) ("As a result of that dispute, US Bank was alerted by Equifax to the fact that Garland did not apply for credit to purchase the RV."); *Llewellyn*, 2023 WL 3734965, at *5 ("Further, 'a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA.'").

Additionally, Garland alleges "actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." *Llewellyn*, 2023 WL 3734965, at *5. Garland alleges that U.S. Bank inaccurately reported fraudulent and erroneous information after the August 2019 transaction. Filing 32 at 39 (¶ 105). Garland similarly alleges that an objectively reasonable investigation would have been able to discover the inaccuracies in that, "[h]ad US Bank investigated as required, the investigation would have shown that the loan application and documentation did not meet US Bank underwriting requirements and that the Garland [sic] did not apply for the loan to purchase the RV." Filing 32 at 26 (¶ 60). Nonetheless, Garland alleges that U.S. Bank failed to correct the alleged inaccuracies, as U.S. Bank found "the information submitted to the consumer reporting agencies [to be] accurate," and therefore made "no changes" to the reporting and "clos[ed] [the] dispute request" Filing 32 at 23, 39–40, 73 (¶¶ 46, 105, 108) ("US Bank . . . has intentionally refused to correct its facially incorrect and false credit reporting as required by the [FCRA] . . . and has failed to conduct a reasonable investigation into the accuracy of the information posted about Garland."); *Echols*, 2021 WL 426255, at *2 ("To state a claim against a furnisher for violating § 16181s-2(b), a plaintiff must establish . . . the furnisher's failure to conduct an investigation, correct any inaccuracies, or notify the CRA of the results of the investigation."). Lastly, Garland plausibly alleges actual damages. Filing 32 at 40 (¶ 109); *Sion,*

2017 WL 952953, at *2 ("To state a negligence claim under FCRA, a plaintiff must plead actual damages stemming from the defendant's violation."); *Llewellyn*, 2023 WL 3734965, at *5. Accordingly, Garland alleges a plausible negligent violation under 15 U.S.C. § 1681*o*. *Doss*, 2021 WL 1206800, at *9 ("A plaintiff states a claim under 15 U.S.C. § 1681s-2(b)(1)(A) when he or she alleges that 'the furnisher failed to reasonably investigate the disputed information and take appropriate action based on its findings.'").

Garland also plausibly alleges a willful failure to comply with the FCRA. As an initial matter, it does not appear that Garland advances the theory that the purported consent order is a basis for finding that U.S. Bank willfully violated the FCRA.[7] *See* Filing 32 at 38 (¶¶ 101–109); Filing 33; Filing 38. Instead, Garland plausibly alleges a willful failure to comply with the FCRA by alleging that U.S. Bank repeatedly violated its subsection (b) duty. *See* Filing 32 at 39 (¶ 105). More specifically, Garland alleges that he "fil[ed] an online dispute with Equifax in May of 2025 in accordance with the [FCRA] informing them that he did not apply for [c]redit with U.S. Bank." Filing 32 at 25 (¶ 55). As noted above, U.S. Bank was notified by Equifax of the dispute and conducted an investigation. 15 U.S.C. § 1681i(a)(2); Filing 32 at 25, 73 (¶ 56). However, the results of U.S. Bank's investigation found the disputed "information submitted to the consumer reporting agencies [to be] accurate" and that "no changes" would be made to U.S. Bank's reporting. Filing 32 at 73. Garland alleges that he "again submitted by U.S. Mail a written dispute . . . to all three credit bureaus and to [U.S. Bank's] Counsel on August 25, 2025." Filing 32 at 25 (¶ 57). However, despite allegedly being alerted of the dispute a second time, U.S. Bank is alleged to have "continu[ed] to report [the allegedly erroneous information] to [CRAs] through at least October of

---

[7] The only proposed cause of action for which Plaintiff explicitly references the purported consent order is his intentional infliction of emotional distress claim. Filing 32 at 48 (¶ 131); Filing 38 at 10.

2025." Filing 32 at 13 (¶ 3); 15 U.S.C. § 1681i(a)(2); *Llewellyn*, 2023 WL 3734965, at *5 ("Further, 'a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA.'"). Garland alleges that U.S. Bank failed to reasonably investigate the dispute a second time because, for the reasons noted above, a reasonable investigation would have shown "that Garland did not apply for any loan to purchase the RV," which would have triggered U.S. Bank's duties to correct inaccurately reported information. *See* Filing 32 at 39–40. (¶¶ 105, 107). However, U.S. Bank has "continu[ed] to report [the allegedly erroneous information] to [CRAs] through at least October of 2025." Filing 32 at 13 (¶ 3). It is on this basis that Garland plausibly alleges a willful violation. U.S. Bank's alleged repeated failure to correct erroneous information generates a plausible inference that U.S. Bank has violated the FCRA knowingly or with reckless disregard of Garland's rights. *Gerena*, 2024 WL 1023033, at *12 ("For the purposes of a Rule 12(b)(6) motion to dismiss, courts have found a plaintiff sufficiently pleads willfulness or recklessness when he or she asserts that a defendant has repeatedly violated FCRA or was aware of FCRA's requirements but failed to comply."); *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal." (citing *Kubas v. Standard Parking Corp. Il*, 594 F.Supp.2d 1029, 1031–32 (N.D. Ill. 2009)).

Accordingly, Garland's proposed first cause of action states a plausible claim to relief, and the proposed claim is therefore not futile. *Hillesheim*, 897 F.3d at 955 (saying the court must decide if the amended pleading states "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *Munro*, 899 F.3d at 589 ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended

37

complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

### 2. Truth in Lending Act

The Proposed Complaint's second cause of action alleges a violation of the Truth in Lending Act (TILA) against U.S. Bank. Filing 32 at 41–43 (¶¶ 110–18).

#### a. The Parties' Arguments

Defendants argue that Garland's TILA claim fails as a matter of law because Garland "was not involved in any 'credit transaction' which is a necessary requisite to any TILA claim." Filing 35 at 8. According to Defendants, "a consumer under TILA is defined as a party to the transaction to whom 'credit is offered or extended' and the money or property subject to the transaction is primarily for personal, family, or household purposes." Filing 35 at 8 (citing 15 U.S.C. § 1602(i)). Defendants assert, however, "It is undisputed that Plaintiff alleges he was not a party to any credit transaction. Plaintiff affirmatively alleges the RV and U.S. Bank Loan transaction was based on fraudulent conduct that he did not authorize." Filing 35 at 8. Defendants therefore conclude, "Based on Plaintiff's affirmative allegations, he cannot invoke any benefit under TILA as a matter of law." Filing 35 at 8.

In reply, Garland argues that Defendants are "attempting to perform word gymnastics by arguing that Plaintiff was not part of the transaction." Filing 38 at 5. Garland argues that "[t]he fact that Plaintiff was unaware that the transaction was taking place does not absolve Defendant from the disclosure statements required under TILA because Plaintiff is still a party to the transaction, albeit as an unknowing participant." Filing 38 at 5. Garland cites to caselaw to support his position that TILA applies here, saying "TILA . . . applied to a similar fraudulent credit application . . . where [the plaintiff's] son forged [the plaintiff's] signature on the credit application

38

for a vehicle." Filing 38 at 6 (citing *Carter v. Atchley Ford, Inc.* No. 8:01CV151, 2002 WL 802682, at *2 (D. Neb. Feb. 20, 2002)). Garland therefore concludes that TILA liability extends to U.S. Bank. Filing 38 at 6.

b.   Garland's Plausibly Alleges a TILA Violation

The Eighth Circuit has explained that TILA, 15 U.S.C. § 1601 *et seq.*, "was passed by Congress as a consumer protection act." *Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 845 (8th Cir. 2009) (citing *Mourning v. Fam. Publ'n Serv., Inc.*, 411 U.S. 356, 363 (1973)). Specifically, TILA exists to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Regulation Z, 12 C.F.R. § 1026.1 *et seq.*, "implement[s] the Federal Truth in Lending Act." 12 C.F.R. § 1026.1(a). The Eighth Circuit construes TILA's provisions and Regulations Z "broadly in favor of consumers." *Rand Corp.*, 559 F.3d at 845.

The Proposed Complaint involves a closed-ended credit transaction. 15 U.S.C. § 1602(j); Filing 32. Therefore, 15 U.S.C. § 1638 governs the claim. 15 U.S.C. § 1638(a). Section 1638(a) requires that creditors disclose *inter alia* the "amount financed," the "finance charge," the "annual percentage rate," and "total of payments" for "each consumer credit transaction." 15 U.S.C. § 1638(a). These disclosures must be made "before the credit is extended" except where the statute provides otherwise. *See* 15 U.S.C. § 1638(b). Regulation Z provides *inter alia* that "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z also states that "the creditor shall disclose" information including but not limited to the "[a]mount financed," the "[f]inance

charge," and the "[a]nnual percentage rate." 12 C.F.R. § 226.18. "The creditor shall make [the required] disclosures before consummation of the transaction." 12 C.F.R. 226.17(b).

"Given the remedial nature of TILA, Congress's intent to protect consumers, and the court's mandate that TILA be liberally construed," the Court agrees with the *Carter* court that an individual that has been reported to a credit reporting agency for having entered a valid credit agreement can be entitled to TILA's protections even if that individual does not allege that he or she is actually an obligor "in the contract law sense." *Carter*, 2002 WL 802682, at *3 (quoting *Belmont*, 119 F.Supp.2d 149, 163–64 (E.D.N.Y. 2002)); *Rand Corp.*, 559 F.3d at 845 (saying TILA and Regulation Z are construed broadly in favor of consumers). This is because, in such situations, the creditor will have taken the position that the agreement that would trigger a duty to disclose certain information is valid and because an alternative finding would create "a lacuna in the statute, [resulting in] an important area in the statute's remedial scheme [being] left unprotected." *Id.* (citing *Belmont*, 119 F.Supp.2d at 163–64).

In this case, U.S. Bank allegedly took the position that the loan application that Garland claims was forged was valid. Filing 32 at 22–23 (¶ 45). It is apparent that U.S. Bank has taken this position under the alleged facts because U.S. Bank has allegedly "report[ed] to consumer credit reporting agencies that Garland defaulted on credit issued by US Bank in his name to purchase an RV, that [U.S. Bank] verified his employment as of October of 2019, and that Garland owes [U.S. Bank] money on the credit they claim they provided him." Filing 32 at 22–23 (¶ 45). U.S. Bank has not contested allegations that it reported Garland to credit reporting agencies. Filing 35 *passim*. Therefore, Garland has plausibly maintained that he was entitled to the protections enumerated in TILA. *Carter*, 2002 WL 802682, at *3–4. Garland has also plausibly maintained that he never received the disclosures he would have been entitled to under TILA. Filing 32 at 41 (¶¶ 110–111),

40

43 (¶ 117). Therefore, Garland has plausibly alleged a claim under TILA. 15 U.S.C. § 1638(a) (providing required disclosures); 12 C.F.R. § 226.18 (same).

### E.  Additional Matters

#### 1.  Derek Mann is Not a Necessary Party with Respect to Garland's FCRA or TILA Claims

In addition to arguments asserting that the proposed claims fail as futile under Federal Rule of Civil Procedure 12(b)(6), Defendants argue that Garland's designation of his son, Derek, as a nominal defendant fails to "cure the Rule 12(b)(7) argument raised in Defendants' Motions to Dismiss," Filing 35 at 19–20, which asserted that "Garland's Amended Complaint should . . . be dismissed pursuant to [Rule] 12(b)(7) for failing to add Garland's son as a necessary party," Filing 26 at 26; *see* Filing 30 at 27. The Eighth Circuit has provided a non-exhaustive list of "good reason[s]" for denying a party's motion for leave to amend. *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004) ("Unless there is a good reason for denial, 'such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment, leave to amend should be granted.'"). The Court need not consider whether failing to add a necessary party constitutes a good reason for denying a party's motion for leave to amend, as proposed nominal defendant Derek is not a necessary party with respect to Garland's FCRA or TILA claims, which are Garland's only remaining proposed causes of action. Filing 32 at 38 (¶¶ 101–109).

> Under Federal Rule of Civil Procedure 19,
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an

41

existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. Garland's FCRA claim alleges a violation under 15 U.S.C. § 1681s-2b, which requires furnishers of credit information to "conduct an investigation" into the "completeness or accuracy of any information" furnished to a CRA upon notice of the dispute. *See* 15 U.S.C. § 1681s-2(b)(1). Conduct attributed to Derek in the Proposed Complaint does not relate to the furnishing of any credit information to a CRA. *See* Filing 32. Derek's conduct similarly does not relate to a furnisher's failure to reasonably investigate a dispute. *See* Filing 32. Garland's TILA claim alleges a violation of 15 U.S.C. § 1638, which requires creditors to make certain disclosures. 15 U.S.C. § 1638. Conduct attributed to Derek in the proposed complaint does not relate to the duty of a creditor to provide disclosures before credit is extended. *See* Filing 32. Therefore, Derek is not a necessary defendant under Rule 19, as he is not required to "accord complete relief" with respect to the FCRA or TILA claims and has no apparent personal interest in the disposition of Garland's FCRA or TILA claims. Fed. R. Civ. P. 19.

### 2. *Defendants' Motions to Dismiss are Moot*

For reasons explained above, Garland's third, fourth, fifth, and seventh proposed claims are futile. Garland's sixth and eighth proposed claims are abandoned. Garland is only granted leave to amend the Amended Complaint with respect to his FCRA and TILA claims asserted against U.S. Bank. Because the Second Amended Complaint will supersede the Amended Complaint, rendering that complaint without legal effect, Defendants' Motions to Dismiss, Filing 23; Filing 27, are moot. *In re Atlas Van Lines, Inc.*, 209 F.3d at 1067 ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." (citing *Washer*, 110 U.S. at 562)).

42

### III. CONCLUSION

As noted above, Garland's motion for leave to amend the Amended Complaint is futile with respect to most of his proposed claims. The Court therefore dismisses those proposed claims identified as futile: Garland's third, fourth, fifth, and seventh causes of action. *Kezhaya*, 78 F.4th at 1051 ("A court's determination that a proposed amendment to a complaint would be futile operates as a ruling on the merits of the proposed claim."). Similarly, the court dismisses Garland's sixth and eighth proposed claims as abandoned for the reasons given above. *See Nine Stories, LLC,* 2024 WL 229464, at *7. Therefore, Garland's leave to amend is limited to his FCRA and TILA claims asserted against U.S. Bank.

Upon the foregoing,

IT IS ORDERED:

1. Defendant's Motions to Dismiss, Filing 23; Filing 27, are denied;

2. Plaintiff's Motion for Leave to Amend, Filing 31, is granted as to his first and second causes of action but otherwise denied;

3. Defendants' Motion to Strike, Filing 39, is denied.

4. Plaintiff's Request for Oral Argument, Filing 43, is denied.

Plaintiff is directed to file a Second Amended Complaint limited to his first cause of action under the FCRA and his second cause of action under TILA, and this case will proceed only on Plaintiff's FCRA and TILA claims against U.S. Bank.

Dated this 18th day of March, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge